IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 24, 2013 Session

## CINDY RUSSELL v.  JEAN CLARIDY

**Appeal from the Circuit Court for Coffee County**
**No. 38900      L. Craig Johnson, Judge**

**No. M2012-01054-COA-R3-CV - Filed February 20, 2013**

A healthy, living tree located in neighbor A's yard was knocked over during a storm and fell into neighbor B's yard.  The trial court found that neighbor A was not liable to neighbor B for the resulting damage.  We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR., J., joined.

Jeffrey D. Ridner, Manchester, Tennessee, for the appellant, Cindy Russell.

Alicia Nicole Napier, Shelbyville, Tennessee, for the appellee, Jean Claridy.

**OPINION**

FACTUAL AND PROCEDURAL BACKGROUND

Cindy Russell initiated this lawsuit in general sessions court against her neighbor, Jean Claridy, for property damage to her 2005 Dodge Caravan caused when a tree from Ms. Claridy's property fell on Ms. Russell's van.  The general sessions court awarded Ms. Russell a judgment in the amount of $8,810.00, and Ms. Claridy appealed to the circuit court.

The case was tried in circuit court on December 6, 2011, and the trial court ruled in favor of Ms. Claridy.  In an opinion and order entered on January 6, 2012, the trial court summarized the relevant facts:[1]

---

[1]The pertinent facts in this case are not in dispute on appeal.  We note, however, that the record on
(continued...)

This case involved a tree located on the property of the defendant which was knocked over and fell on the vehicle of the plaintiff, Cindy Russell. On the 26th day of May 2011, a severe thunderstorm struck the Lakewood Park, a rural neighborhood and campground, located in Northern Coffee County, TN, resulting in the aforementioned fallen tree. According to the testimony of the plaintiff and as evidenced by the pictures presented, the vehicle was totaled. The plaintiff also alleged that some wood on her property was damaged.

The defendant admitted she got a phone call from the plaintiff some years ago, but she didn't see a problem with the tree based on the fact that it was healthy, and it was basically on pasture land. It is apparent from the pictures that the lots are fully grown up and full of trees and are generally wooded. It is also apparent in the pictures that this tree was healthy and had a full leafy green appearance prior to the thunderstorm that caused the tree to fall. The Court finds that the tree involved in this case was a living, thriving tree, and that the [defendant] had no notice that the tree was unhealthy and subject to falling.

The trial court concluded that the tree was felled by an act of God and that, therefore, Ms. Claridy was not liable for the damages to Ms. Russell's van.

Ms. Russell filed a motion to alter or amend, citing her own testimony that the tree in question was "unhealthy and subject to falling" and that she had provided Ms. Claridy with notice of the tree's condition prior to the tree falling. The court denied Ms. Russell's motion "based on the fact that no errors of fact or law exist, and the fallen tree fell by an 'Act of God.'"

On appeal, Ms. Russell argues that the trial court erred in declining to apply the "Hawaii rule" and that she is entitled to a judgment in her favor or a new trial.

STANDARD OF REVIEW

In an appeal of a decision rendered after a bench trial, we review the trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993). Moreover, we "give great weight to the trial court's assessment of the evidence because the trial court is in a much better position to evaluate the credibility

---

[1](...continued)
appeal includes no transcript and that a statement of the evidence approved by the trial court (attached to the appellant's brief) is not part of the appellate record.

of the witnesses." *Boyer v. Heimermann*, 238 S.W.3d 249, 255 (Tenn. Ct. App. 2007). We review questions of law de novo with no presumption of correctness. *Nelson v. Wal-Mart Stores, Inc.*, 8 S.W.3d 625, 628 (Tenn. 1999).

ANALYSIS

Ms. Russell's case on appeal hinges on whether the trial court made an error of law. As she conceded at oral argument, she does not assert that the evidence preponderates against the factual findings made by the trial court, including the key finding that the tree that fell on Ms. Claridy's house was a healthy, living tree. Rather, Ms. Russell asserts that the trial court applied the wrong legal principles to the facts of this case. For the reasons discussed below, we agree with the trial court's analysis.

According to Ms. Russell's position, this case should be governed by the "Hawaii rule" applicable to nuisance cases. The trial court determined that the Hawaii rule did not apply and that the case was governed by tort principles discussed in *Staples v. Duell*, 494 S.E.2d 639 (S.C. Ct. App. 1997). The *Staples* case involved a rural landowner's liability for injuries sustained by the plaintiff when she collided with a dead pine tree that had fallen from the defendant's property into the road. *Id.* at 640. In analyzing the case, the court discussed the traditional distinction between rural and urban landowners with regard to the duty to inspect and improve their land. *Id.* at 641-42. The court declined to recognize an exception to the rule that rural landowners have no duty to inspect their land. *Id.* at 642. Applying general tort principles, the court affirmed the trial court's holding that "because the land from which the tree fell was rural, Duell had no common law duty to prevent the dangerous condition caused by the dead pine tree." *Id.* at 641.

What about the Hawaii rule adopted in *Lane v. W.J. Curry & Sons*, 92 S.W.3d 355, 363 (Tenn. 2002)? In that case, Ms. Lane brought a nuisance action against her adjoining neighbor.[2] *Id.* at 356. The problem presented in *Lane* was that the branches and roots of trees in the neighbor's yard were encroaching on Ms. Lane's property and causing damage to her house:

> The defendant's trees were described as "overshadowing the [plaintiff's] entire house." The plaintiff has had problems with the trees' limbs and roots encroaching upon her property for many years. Her roof, for example, had to be replaced in the late 1980s because the overhanging branches did not allow

---

[2]A nuisance is a tort characterized by interference with the use or enjoyment of property and typically involves a persistent condition. *See Lane*, 92 S.W.3d at 364; BLACK'S LAW DICTIONARY 1096 (8th ed. 2004).

the roof to ever dry, causing it to rot. The plaintiff testified that prior to that time "[e]very roof and wall in [her] house had turned brown and the ceiling was just falling down. We would be in bed at nighttime and the ceiling would just fall down and hit the floor."

In 1997, a large limb from one of the defendant's trees located between the parties' houses broke off and fell through the plaintiff's roof, attic, and kitchen ceiling, causing rainwater to leak into the interior of the home. The water ruined the plaintiff's ceilings, floor, and the stove in the kitchen. . . .

In addition to the harm caused by the overhanging branches, roots from the defendant's trees have infiltrated and clogged the plaintiff's sewer line, causing severe plumbing problems. The plaintiff has tried to chop the encroaching roots over the years, but they keep growing back and causing more plumbing problems. The plaintiff has not been able to use her toilet, bathtub, or sink in two years because of the clogged sewer pipes. She must go to a neighbor's house to use the restroom. Raw sewage bubbles up into her bathtub, and her bathroom floor has had to be replaced because her toilet continually backs up and water spills onto her floor. Neighbors have complained to the plaintiff about the smell of sewage coming from her property.

*Id.* at 357 (footnote omitted). The trial court reached the conclusion that Ms. Lane's sole recourse was self-help and that the defendant's living trees did not present an actionable nuisance. *Id.* at 358.

The Supreme Court, in *Lane*, reviewed the precedents in this state and others concerning encroaching vegetation. *Id.* at 358-60. The Court then adopted the approach used in Hawaii, "which holds that living trees and plants are ordinarily not nuisances, but can become so when they cause actual harm or pose an imminent danger of actual harm to adjoining property." *Id.* at 362-63. Applying the Hawaii rule, the Court reached the following conclusions:

Accordingly, we hold that encroaching trees and plants are not nuisances merely because they cast shade, drop leaves, flowers, or fruit, or just because they happen to encroach upon adjoining property either above or below the ground. However, encroaching trees and plants may be regarded as a nuisance when they cause actual harm or pose an imminent danger of actual harm to adjoining property.

-4-

*Id.* at 364. Because the defendant's encroaching trees "adversely affected the plaintiff's reasonable and ordinary use and occupation of her home, not to mention posing hazards to the plaintiff's health and safety," the Court determined that they constituted a nuisance. *Id.* at 366.

In arguing that the rule announced in *Lane* should apply in the present case, Ms. Russell focuses on the following language from a footnote:

> It is important to note, however, that dead or decaying trees that cause harm are in a category of their own and require a different analysis. Unlike the cases involving harm caused by live trees, which are based on nuisance or trespass principles, cases involving dead or decaying trees are typically analyzed according to negligence concepts. Thus, liability usually turns on whether the defendant landowner lived in an urban or rural area, and whether the defendant knew or should have known that the tree was dead or decaying and therefore was on notice that the tree might fall. The trees involved in the present case are live, healthy trees. Thus, we do not reach the question of whether or to what extent liability may be imposed for harm caused by a dead or decaying tree. That subject must await an appropriate case.

*Id.* at 364 n.9 (citations omitted). In this case, there is no evidence that the live tree that fell on Ms. Russell's car was encroaching on her property or presented an imminent danger of harm to her property prior to the storm that caused the tree to fall. Thus, even if we strictly apply the live tree/dead tree dichotomy suggested in this footnote, the same result follows. Under the facts as found by the trial court, we see no basis upon which to conclude that the tree constituted a nuisance. Arguably, because the live tree that fell on Ms. Russell's car was not encroaching on her property, the Hawaii rule would not apply. Even if applied, however, the rule leads to the same result: no liability.

We find no error in the trial court's conclusion that the tree that damaged Ms. Russell's van was felled by an act of God and that Ms. Claridy is not liable for the damage caused by the tree. *See Hames v. State*, 808 S.W.2d 41, 44 (Tenn. 1991).

CONCLUSION

We affirm the judgment of the trial court. Costs of appeal are assessed against the appellant, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE